UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHELLY BOYLE,

                              Plaintiff,

            -vs-                                              08-CV-893-JTC

GENWORTH LIFE AND HEALTH
INSURANCE COMPANY,
                              Defendant.

_____

APPEARANCES:   E. PETER PFAFF, ESQ., East Aurora, New York, Attorney for
               Plaintiff.

               WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
               (JOSHUA BACHRACH, ESQ., OF COUNSEL), Philadelphia,
               Pennsylvania, Attorneys for Defendant.

## INTRODUCTION

By order of United States District Judge Richard J. Arcara dated July 6, 2011

(Item 60), this matter has been reassigned to the undersigned for all further

proceedings.

This case was brought pursuant to the Employee Retirement Income Security

Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA").  Plaintiff seeks long term disability

benefits under an employee benefit plan offered by her former employer.  Her claim

was denied based on an exclusion in the plan for disabilities arising out of a pre-existing

condition.  Plaintiff does not dispute that her disability is the result of a pre-existing

condition, but states that the exclusion was waived by her employer.  Additionally,

plaintiff contends that New York Insurance Law does not allow an insurer to bar

coverage based on a pre-existing condition.  It is the defendant's position that Rhode Island law applies to this policy and that benefits were properly denied.

## BACKGROUND

Plaintiff commenced this ERISA action with the filing of a complaint on December 8, 2008 (Item 1).  In her complaint, she alleged that she was employed by Alcott Staff Leasing, Inc. ("Alcott") and was a participant in the Alcott Group Long Term Disability Plan issued by defendant Genworth Life and Health Insurance Company ("Genworth") (Item 1, ¶ 4).[1]  Plaintiff, a chiropractor, was employed by Alcott as a medical peer reviewer.  In December 2005, plaintiff applied for coverage under the group disability policy.  *Id.,* ¶ 11.  On August 31, 2006, plaintiff ceased working due to disability and applied for long term disability benefits.  Defendant denied plaintiff's request for long term disability benefits based on an exclusion in the policy for pre-existing conditions.  *Id.,* ¶¶ 12 -13, 15.

Plaintiff was diagnosed with multiple sclerosis ("MS") several years before.  In late 2005, she was told by Alcott's representatives that no pre-existing condition exclusion applied to the long term disability plan (Item 1, ¶¶ 22-24).  Plaintiff obtained a letter, dated December 23, 2005,  from a supervisor in the Alcott corporate office in Farmingdale, New York, confirming that "the benefit plans The Alcott Group offers are not subject to pre-existing conditions."  *Id.,* Exh. A.

Defendant Genworth filed its answer to the complaint on January 7, 2009 (Item 2).  In a stipulation filed November 23, 2009, the action was dismissed as against Alcott

---

[1]  Genworth was formerly known as GE Group Life Assurance Company and is now known as Sun Life and Health Insurance Company.

and the Alcott Group Long Term Disability Plan (Item 26).  On September 19, 2010,

defendant filed a motion for summary judgment (Item 37), and on September 21, 2009,

plaintiff cross-moved for the same relief (Item 41).  On January 31, 2010, the parties

filed memoranda in opposition to the cross motions (Items 48, 50).  On February 25,

2010, the parties filed reply memoranda (Items 54, 55).  Oral argument was heard

before United States Magistrate Judge H. Kenneth Schroeder, Jr.  on March 7, 2011.

For the reasons that follow, the defendant's motion for summary judgment is granted,

and the plaintiff's motion is denied.

## FACTS

In support of its motion for summary judgment, defendant has submitted

plaintiff's claim file, including the policy of insurance, appended to the affidavit of Paul

Briere, senior benefit analyst for defendant (Item 37, Exh. A).[2]  The policy was issued

by GE Group Life Assurance Company to Alcott Staff Leasing, Inc., on July 1, 1996.

The policy holder is the "Trustee of the Manufacturing Industry Group Insurance Fund

(Rhode Island)" under a trust agreement dated January 1, 1994.  The state of issue is

specified as Rhode Island (AR 1).  The policy also provides that it is "governed by the

laws of the State of Issue shown above, which is the state of issue of the group policy."

*Id.*

According to the group disability plan, a pre-existing condition is defined as a

sickness or injury for which the insured "[r]eceived medical care, treatment, or

---

[2]  The claim file is referred to as the Administrative Record, and page citations to the file will be
preceded by "AR."

3

consultation, diagnosis or diagnostic tests" or "[t]ook any drugs, medicine or medication prescribed or recommended by a Physician" during the three months before the effective date of the policy (AR 8).  The policy further provides that long term disability benefits will not be paid "[f]or any Period of Disability which is caused by, contributed to by, or results from a Pre-existing Condition . . ." (AR 18).  The exclusion does not apply if the disability commences after 12 months of continuous insurance coverage.  *Id.*  Under "General Provisions," the policy states that changes can be made in writing upon the agreement of the policy holder and the insurer, and that "[n]o agent may change or waive any of the policy provisions, nor can an agent make any agreement that would be binding on" the insurer (AR 25).

According to plaintiff's application for long term disability benefits dated September 15, 2006, she stopped working due to MS on August 30, 2006 (AR 37). She was first treated for her illness in 1990 and was seen by her treating physician on July 26, 2006 (AR 39).  Medical records submitted in support of her application also indicate that she was treated on November 29, 2005 (AR 149).

In a letter dated November 14, 2006, defendant informed plaintiff that her claim for long term benefits was denied (AR 130-31).  On May 10, 2007, plaintiff formally appealed that decision, stating that her employer amended the plan and waived the pre-existing condition exclusion (AR 98-100).  Upon review of the denial of plaintiff's claim, defendant upheld its decision (AR 89-94).  With regard to plaintiff's argument of waiver or amendment of the policy, defendant stated that "Alcott had no authority to make such a statement or exception to their contract.  Neither is there any record that

they sought or received such a waiver or amendment of the plan language from us" (AR 93).

Michael Sabadosa, an Underwriting Consultant with Sun Life and Health Insurance Company ("Sun Life"), the successor to defendant Genworth, stated in an affidavit that at the time Alcott requested insurance coverage, GE Group Life Assurance Company, Genworth's predecessor, offered 33 separate multiple employer trusts representing different industries (Item 48, ¶ 7).  An applicant is placed in a particular trust based on the nature of its business, which is determined by the Standard Industrial Classification ("SIC") code stated by the employer on its application for coverage. *Id.,* ¶ 8.  Based on its choice of SIC code 3612, Alcott was placed in the Manufacturing Industry Group Insurance Fund Trust.  *Id.,* ¶¶ 9-10.  The 33 different multiple employer trusts offered by defendant are considered "same industry trusts." *Id.,* ¶ 12.  Census information on Alcott's 1996 application indicates that its 46 employees held job titles indicative of work in the manufacturing industry, including assembler, technician, and engineer (Item 59, Exh. A).

## DISCUSSION

The facts of this case are not in dispute.  Plaintiff was diagnosed with MS in 1990, prior to her enrollment in the Alcott disability plan.  She was erroneously informed by Alcott representatives that the disability plan did not contain an exclusion for pre-existing conditions.  Plaintiff was disabled in 2006 due to MS, applied for benefits, and was denied those benefits based on her pre-existing condition.

Plaintiff contends that the policy is subject to New York Insurance Law § 3234(a)(2) which allows insurers to toll benefits for 12 months but does not permit an absolute bar to coverage for disabilities stemming from pre-existing conditions. Defendant argues that this section of the New York State Insurance Law does not apply to the policy here, as it was issued in the state of Rhode Island[3] and was issued to a "same industry trust." Defendant also argues that plaintiff failed to raise this argument on her administrative appeal, and thus has waived it.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought. *See Scott v. Harris,* 550 U.S. 372, 381 (2007). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. *See Scott*, 550 U.S. at 381 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986)).

Plaintiff relies on *Benesowitz v. Metropolitan Life Ins. Co.*, 870 N.E.2d 1136 (N.Y. 2007) in support of her position that New York law applies to the group policy in this case. In *Benesowitz,* responding to a certified question of the Second Circuit, the New York Court of Appeals held that Insurance Law § 3234(a)(2) allows insurers to toll

---

[3] Rhode Island law does not bar the exclusion for pre-existing conditions.

benefits during the first 12 months of coverage, but does not permit them to impose an absolute bar to coverage for disabilities stemming from pre-existing conditions and arising during that 12-month period.  By its plain language, that statute applies to "[e]very group or blanket policy issued or issued for delivery in this state . . . ."  N.Y. Ins. Law § 3234(a) (McKinney 2006).

Plaintiff argues that the policy should be deemed to have been issued or delivered in New York because plaintiff is a New York resident and her employer is a New York corporation.  Following a remand, in *Benesowitz v. Metropolitan Life Ins. Co.*, 2009 WL 2196785 (E.D.N.Y. July 9, 2009) ("*Benesowitz II*"), the court held N.Y. Ins. Law § 3234 applicable to the group insurance policy at issue and ruled that the policy was "deemed to have been delivered" in New York pursuant to N.Y. Ins. Law § 3201(b)(1).  *Benesowitz II,* 2009 WL 2196785, at *7-8.  The court in *Benesowitz II* did not specifically consider the applicability of section 3201(b)(1), but relied on the doctrine of the law of the case.

Section 3201(b)(1) provides:

> A group life, group accident, group health, group accident and health or blanket accident and health insurance certificate evidencing insurance coverage on a resident of this state shall be deemed to have been delivered in this state, regardless of the place of actual delivery, unless the insured group is of the type described in . . .  [section 4235(c)(1)].

N.Y. Ins. Law § 3201(b)(1)(B) (McKinney 2009).  Section 4235(c)(1) describes various group policies issued to employers, labor unions, trustees of a fund established by an employer or  trade association, and other entities.  These group policies, including those issued to a multiple employer trust, are not deemed to have been delivered in

New York, unless specifically excepted.  Those exceptions include policies "where the group policy is issued to a trustee or trustees of a fund established or participated in by two or more employers not in the same industry with respect to an employer principally located within the state . . . ."  N.Y. Ins. Law § 3201(b)(1).[4]  Thus, a policy issued to a multiple employer trust is not deemed delivered in New York if the employers are engaged in the same industry.[5]

Defendant contends that this policy, issued to the "Trustee of the Manufacturing Industry Group Insurance Fund (Rhode Island)," falls within the "same industry trust" exception to section 3201(b)(1) and, accordingly, is not deemed to have been delivered in New York.  *See Woloshin v. Aetna Life Ins. Co.,* 688 F. Supp. 2d 341, 346 (S.D.N.Y. 2010) (group accident and health insurance policy which specified that it was to be construed pursuant to the laws of the State of Florida, fell within exception to N.Y. Ins. Law § 3201(b)(1) as policy issued to employer and was not deemed to have been delivered in New York).  Moreover, the policy on its face elects Rhode Island law as controlling its interpretation and provides that Rhode Island is the state of issue.  *See Greenberg v. Aetna Life Ins. Co.,* 2011 WL 1781900 (2d Cir. May 11, 2011) (policy not deemed delivered in New York where it elected Pennsylvania law as controlling its interpretation and stipulated that it was to be delivered in Pennsylvania).[6]

---

[4]  Plaintiff does not contend that any other exception specified in section 4235 applies to the policy here.  *See* N.Y. Ins. Law §4235(c)(1)(K, (L), (M).

[5]  These sections of the New York Insurance code are not a model of clarity.

[6]  To the extent that plaintiff argues that N.Y. Ins. Law §3103(b) prohibits a choice of law provision in a group insurance policy, that section applies only to policies "delivered or issued for delivery" in New York State.

Plaintiff contends that the Manufacturing Industry Group Insurance Fund (Rhode Island) is not a "same industry trust" because Alcott is not a manufacturing concern, but is in the business of employee leasing.  She relies on a General Counsel Opinion of the New York Department of Insurance in which a particular industry group insurance fund was found not to be a same industry trust based on the classification of its members according to a single-digit SIC code.  *See* Item 41, Att. 4.[7]  The General Counsel opined that "'same industry' refers to the primary activities of the employer . . . ."  *Id.,* p. 4. Here, defendant states that Alcott listed SIC code 3612 on its application in 1996 and was thus placed in the Manufacturing Industry Group Insurance Fund Trust.  The census information provided with its application in 1996 indicated that Alcott employed workers with titles in the manufacturing industry.  Defendant states that, had Alcott provided a different SIC code, it could have been placed in one of 33 separate trusts it offers, including a Service Industry Trust.  There is nothing in the record to indicate that, at the time the policy was issued, Alcott was incorrectly placed in the Manufacturing Industry Group Insurance Fund or that the Manufacturing Industry Group Insurance Fund is not a same industry trust as that term is used in the New York Insurance Law.

The policy here was issued to a multiple employer, same industry trust and is governed by the law of Rhode Island.  New York law, which prohibits the absolute bar for coverage due to pre-existing conditions, does not apply to this policy. Pursuant to the Supreme Court's decision in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989), a *de novo* standard applies to the review of a denial of benefits

---

[7]  Case law in this area is scant.

9

under the ERISA statute, § 1132(a)(1)(B), "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Here, the plan identifies defendant as the fiduciary and states that defendant "shall have the sole and exclusive discretion and power to grant and/or deny any and all claims for benefits, and construe any and all issues relating to eligibility for benefits" (AR 31).  "Where such discretionary authority is reserved, denials may be overturned as arbitrary and capricious only if the decision is without reason, unsupported by substantial evidence or erroneous as a matter of law."  *Fay v. Oxford Health Plan,* 287 F.3d 96, 104 (2d Cir. 2002) (internal quotation marks and citation omitted).  Plaintiff was diagnosed with MS in 1990 and was treated for the illness in the three months prior to the effective date of the policy.  Her claim falls squarely within the plan's exclusion for pre-existing conditions.  Additionally, changes to the policy cannot be made by the employer and insured.  The policy provides that "[n]o agent may change or waive any of the policy provisions; nor can an agent make any agreement that would be binding on" defendant (AR 25).  Accordingly, the court finds that the decision to deny plaintiff disability benefits was not without reason, unsupported by substantial evidence, or erroneous as a matter of law.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment is granted, and the plaintiff's motion for summary judgment is denied.  The Clerk is instructed to enter judgment for the defendant and close the case.

10

So ordered.

\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated:  July 7, 2011
p:\pending\2008\08-993.jun611